| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**WASSERMAN, JURISTA & STOLZ, P.C.**<br>110 Allen Road<br>Suite 304<br>Basking Ridge, New Jersey 07920<br>Phone: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Counsel for Debtor-in-Possession, Marburn Stores, Inc., d/b/a Marburn Curtains*<br>**DANIEL M. STOLZ, ESQ.**<br>**SCOTT S. REVER, ESQ.**<br>**DONALD W. CLARKE, ESQ.** | |
| **In Re:**<br><br>**MARBURN STORES, INC., d/b/a MARBURN CURTAINS,**<br><br>Debtor-in-Possession. | Chapter 11<br><br>Case No. 15-14411<br><br>Hearing Date:<br><br>Honorable TBD |

**DEBTOR'S MOTION FOR THE ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION, GRANTING RELATED RELIEF AND <u>SCHEDULING FINAL HEARING THEREON</u>**

TO:  HONORABLE _____
     UNITED STATES BANKRUPTCY JUDGE
     FOR THE DISTRICT OF NEW JERSEY

Marburn Stores, Inc. d/b/a Marburn Curtains/Martin Curtain Warehouse (hereinafter, the "Debtor" or "Marburn") by and through its proposed undersigned Counsel, hereby submits this Motion (the "Motion") for entry of an Interim Order (the "Interim Cash Collateral Order"), and after a final hearing on the Motion (the "Final Hearing"), the entry of a Final Order (the "Final Cash Collateral Order"), (a) authorizing the Debtor to use cash collateral subject to the lien of Business Financial Services, Inc. (hereinafter, "BFS"), (b) granting adequate protection to BFS with respect to such use of cash collateral and any diminution in value of BFS's interests in the pre-petition collateral (c) prescribing the form and manner of notice setting the time for the Final

Hearing and (d) granting certain related relief.  In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory basis and legal predicates for the relief sought herein are 11 U.S.C. §§105(a), 361, 362, 363 and Rules 2002, 4001, 6003 and 9014(a) of the Federal Rule of Bankruptcy Procedure and D.N.J. LBR 4001-4.

## GENERAL BACKGROUND

3. Marburn Stores, Inc. d/b/a Marburn Curtains/Martin Curtain Warehouse (hereinafter, the "Debtor" or "Marburn") was started in 1956 by its founder Bernard Hinden, as a single department in the Sloan's Home Fair Store in Union City, New Jersey.

4. Over the years, Marburn grew to twenty-one (21) independent retail stores, located in New York, New Jersey and Pennsylvania.  When the original owner of Marburn decided to withdraw from the company, he sold ownership of Marburn to its employees, under an Employee Stock Ownership Plan (hereinafter, "ESOP").

5. Currently, Marburn is one of approximately two hundred (200) ESOPs in Metropolitan Area and is one of the few 100% employee owned retail ESOPs in the State. Marburn specializes in curtains, draperies and window treatments.  Marburn also carries a complete line of home furnishings.

6. Marburn's central office and warehouse is located at 13-A Division Street, Fairview, Bergen County, New Jersey.

7. For the year 2014, Marburn generated gross sales of approximately $25 Million Dollars.

8. Unfortunately, because of a number of factors, Marburn suffered an operating loss for the year 2014 in the approximate amount of $2.5 Million Dollars.

9. In addition, the months of January, February and early March are traditionally the slowest sales periods annually. In early 2015, the harsh weather kept customers from Marburn's stores, depressing sales even more than customary in these winter months.

10. In light of the losses being incurred through operations, management of Marburn has begun taking steps to preserve available cash, such as laying off unnecessary personnel and closing stores. Unfortunately, the lack of sales during early 2015 has placed Marburn in a cash position where it cannot meet its ongoing obligations.

11. Based upon the foregoing, on March 13, 2015, Marburn filed a Voluntary Petition under 11 U.S.C. 1101, et seq. with this Court.

12. The Debtor intends to continue to operate under Chapter 11 and intends to file a Plan of Reorganization.

13. At the time of the Chapter 11 filing, Marburn was indebted to its suppliers and other vendors in the approximate amount of $1.6 Million Dollars. In addition, Marburn owed pre-petition rent to its Landlords totaling four hundred thousand dollars ($400,000.00).

14. Management of Marburn consists of Edwin F. Hund, President and CEO, Deborah Egan, VP of Merchandising and John Wendel, Director of Stores.

15. The Debtor is a party to an accounts receivable purchase agreement with Business Financial Services, Inc. (hereinafter, "BFS"). Pursuant to the agreements with BSF, BSF advanced the Debtor the sum of seven hundred thousand dollars ($700,000.00). . BFS deducts 6% of the payment card receipts and applies said amount towards the purchased receivables. At

present, the indebtedness to BFS is in the approximate amount of six hundred thirty five thousand dollars ($635,000.00).

16. The Debtor maintains inventory in its warehouse and stores with a cost value of approximately $4.8 Million Dollars and a retail value of approximately $10 Million Dollars. The Debtor also owns certain store fixtures and equipment, the value of which is presently unknown.

17. During the upcoming Easter season, Marburn expects sales to dramatically increase.

18. Through these Chapter 11 Proceedings, Marburn may consider closing the least profitable stores and consolidating inventory in the remaining stores. Marburn will also review other possible measures which can be taken to increase sales and decrease costs.

## THE BFS AGREEMENT

19. On or about November 7, 2014, the Debtor entered into an Accounts Receivable Purchase Agreement (hereinafter, "A/R Agreement") with BFS, a copy of which is annexed hereto and marked Exhibit "A".

20. Pursuant to the A/R Agreement, BFS delivered the Debtor an initial sum of $700,000, in exchange for the Debtor's agreement to sell and transfer to BFS what the A/R Agreement characterizes as a "settlement percentage", equivalent to 6% of all payment card receipts resulting from sales by the Debtor.

21. BFS is authorized to deduct said 6% from the receipts received in the Debtor's bank account at PNC Bank and such "settlement percentage" is applied to the purchased receivables.

22. At the time of the filing of the within Chapter 11 Petition, the Debtor was indebted to BFS in the approximate amount of $635,000. Prior to the Chapter 11 filing, the Debtor was not in default under the A/R Agreement with BFS.

23. To secure the obligations due to BFS, BFS was granted a "blanket lien" on all of the Debtor's assets.

## PROPOSED USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

24. BFS is vastly over secured. The indebtedness due to BFS is in the approximate amount of $635,000. The indebtedness is secured by inventory with a cost value of approximately $4.8 Million Dollars, together with the store fixtures, accounts receivable and other assets of the Debtor.

25. The Debtor proposes to continue operating post-petition pursuant to the terms of the A/R Agreement, under which BFS will be entitled to withdraw 6% of all payment card account receipts, as such receipts are deposited into the Debtor's account at PNC Bank.

26. The continuing payment of 6% of the payment card receipts should slowly reduce the Debtor's obligations under the A/R Agreement. The foregoing alone would constitute reasonable adequate protection.

27. In addition to the foregoing protections, the Debtor proposes to grant BFS a replacement lien on all post-petition assets, to further secure their position and provide further adequate protection.

## RELIEF REQUESTED AND BASIS THEREFOR

28. The Debtor requests authorization to use cash collateral to meet the ordinary cash needs of the Debtor for the payment of actual expenses of the Debtor necessary to (a) maintain and preserve the assets, and (b) continue operation of its business, including the schedule of the Debtor's imminent cash requirements

## NOTICE

29. *In accordance with Section 363(c)(3), the Debtors hereby request that this Court conduct an interim hearing authorizing the Debtors' use of cash collateral, and schedule a final*

*hearing within fourteen (14) days, as permitted by F.R.B.P. 4001, at which time any objections, if any, to the Debtors' continued use of cash collateral can be heard*.

30. The Debtor seeks the requested interim relief and proposes to serve the Debtor's twenty (20) largest creditors; the Office of the United States Trustee, the New Jersey and Federal Tax Authorities and counsel to the Debtor's pre-petition secured creditor assignee and all parties who have filed a Notice of Appearance. The Debtor respectfully submits that such service will constitute good and sufficient service.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order authorizing the Debtor's interim use of cash collateral pursuant to Sections 363 of the Bankruptcy Code and F.R.B.P. 4001, and scheduling a final hearing, and to grant such other and further relief as this Court may deem just and proper.

Respectfully yours,

**WASSERMAN, JURISTA & STOLZ, PC**
*Proposed Counsel to Debtor-in-Possession*

*/s/ Daniel M. Stolz*

**Dated: March 13, 2015.**    **By:** _____
**DANIEL M. STOLZ**
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Tel: (973) 467-2700
Direct Dial: (973) 346-7608
Fax: (973) 467-8126
Email: dstolz@wjslaw.com